HUNTER, Appellant, v. JOHNSON, Respondent.

St. Louis Court of Appeals, May 22, 1906.

1. **BILLS AND NOTES: Innocent Purchaser: Contemporaneous Agreement.** In an action by the indorsee of a promissory note purchased before maturity, evidence of a contemporaneous agreement between the maker and the payee modifying the terms of the note, was inadmissible in evidence.

2. ————: **Payment to Indorser.** And in such action it was incompetent to show payments made by the maker to the indorsee after the transfer of the note, in the absence of any authority shown on the part of the indorser to collect for the indorsee.

3. **PRACTICE: Evidence: Part of Deposition.** Where one party to a cause introduces on the trial a part of a deposition, it is error on the part of the court to exclude other parts of the same deposition explanatory of the parts introduced.

Appeal from Taney Circuit Court.—*Hon. Asbury Burkhead,* Judge.

REVERSED AND REMANDED.

*John H. Boogher, Eustace C. Wheeler* and *R. C. Ford* for appellant.

*Price* and *McConkey* for respondent.

GOODE, J.—This action originated before a justice of the peace, went to the circuit court on appeal, was tried there anew and an appeal taken, from the judgment then given in favor of the defendant, to this court. The action was on the following promissory note.

"$500.00        Brown Branch, Mo., December 21, 1892.

"Two years after date I promise to pay to D. F. Hunter, or bearer, five hundred dollars, for value received, negotiable and payable, without defalcation or

discount, and with interest from date at the rate of six per cent per annum, and bear the same rate of interest.

"ADAM JOHNSON.

"Credits:  October 12, 1895 ............ $ 85.60
June 26, 1896 ................. ........ 273.60
Dec. 19, 1896 ................. ........... 98.77
"Indorsed: D. F. Hunter."

The defendant and D. F. Hunter, the payee of the note, were formerly partners in a mercantile business in Taney county, Missouri. After conducting the business for a year or two, they dissolved partnership and settled their affairs in 1892. By the terms of the settlement Johnson became indebted to D. F. Hunter in the sum of $2,000, for which he executed to the latter four promissory notes of $500 each. The indebtedness arose from the purchase by Johnson of Hunter's interest in the partnership assets and good-will. According to Johnson's testimony the first of the four notes fell due in eight or nine months, the second in twelve months, the third in two years and the fourth in three years. The note in suit was the third one. It passed into the possession of Harry Hunter (plaintiff) who is the son of D. F. Hunter, in the settlement of a partnership which had existed between them and which was dissolved in 1894. This partnership succeeded the partnership between D. F. Hunter and Johnson. Subsequently Harry Hunter moved to St. Louis and the business connection between him and his father in Taney county was dissolved. In the settlement the father turned over to Harry Hunter, by indorsement, the note in suit. The testimony of those men is that the indorsement was made in good faith, for a valuable consideration and prior to the maturity of the instrument. There is little or no evidence to the contrary in the record. Harry Hunter swore he had been paid on the note no more than the credits which are shown above to have been entered on it, leaving a balance due. Johnson swore the full amount of this note

had been paid by him, as well as the other three notes given to D. F. Hunter. But he wrote two letters to Harry Hunter in one of which he practically admitted owing a balance on the note in suit:

"Brown Branch, Mo., June 16, 1899.
"Mr. H. F. Hunter, St. Louis, Mo.

"Dear Sir: In regard to sending you some money, I cannot send it. I don't think you need depend on it, for as I told you I will pay you every cent that is due you. As I am coming down there in August or September, we will settle up then.       Yours as ever.

"ADAM JOHNSON."

That letter was written in answer to a demand for further payment. Johnson explained the letter by saying he was in doubt about how he had made certain payments on this note and wrote as he did in order to draw out of Harry Hunter a statement of what the latter claimed in regard to the balance on the note and the payments that had been made. Johnson testified that he sent D. F. Hunter $158 to pay the balance due on the note in dispute and that this payment never had been credited but that D. F. Hunter promised to send the note to him (Johnson) by Harry Hunter when Harry came to collect the last note, in settlement of which Johnson was trying to trade some cattle. Harry was to come to Taney county to examine the cattle. Johnson swore he sent two payments of $100 and $58 respectively. He swore also to sending a pension check for $90 and $10 in cash on February 17, 1897, and a check for $48 and $19 in cash on March 18, 1897. These sums were sent, according to Johnson, to D. F. Hunter, who was then in St. Louis, as was Harry. Some testimony tended to show Johnson never turned over to plaintiff or his father the pension check. Johnson's testimony is confusing. After swearing, as we have stated, he said that maybe he was mistaken and had partly paid the note by paying $98.77 taxes for D. F. Hunter.

Against the objection of plaintiff, Johnson was permitted to testify and prove that at the time he executed the four notes to D. F. Hunter, a written contract, now lost, was entered into between him and said Hunter by the terms of which he was not to pay any interest on the notes. Johnson swore that if Harry Hunter ever had any knowledge of this contract he (Johnson) was unaware of the fact. There was no proof whatever that plaintiff knew anything about the agreement if it ever was made. Such a collateral instrument and the note, might be construed to constitute one agreement in an action betwen the parties or against a transferee with notice. But as it was directly opposed to the unconditional terms of the note itself, which defendant had given currency to as a negotiable instrument, and plaintiff swore he had acquired for a valuable consideration, before maturity and without notice of the contemporaneous agreement, it could not cut the plaintiff out of his right to interest on the note, if he was in fact a bona fide indorsee. [1 Daniel, Neg. Ins. (5 Ed.), sec. 159; Mater v. Bank, 8 Colo. App. 325.] If plaintiff had purchased the note after maturity, or was not a purchaser in good faith, or the note contained a reference to the collateral agreement, possibly a different ruling would be made.

Johnson was permitted to prove, over the objection of plaintiff, some payments he claimed to have made on this note to D. F. Hunter after the latter had parted with the instrument by indorsement to plaintiff. These payments were disputed both by D. F. Hunter and Harry Hunter and there was not a particle of evidence tending to show, if made, that plaintiff authorized his father to collect the money or ever had received it from his father. All such testimony was incompetent. The rulings on the instructions adopted the theory that plaintiff was bound by any payments made to D. F. Hunter after the note had passed to plaintiff, and that if Johnson had paid D. F. Hunter the full amount of it plaintiff could

not recover. This view of the case was radically wrong. It is no defense to the action for the balance due that defendant made payments to plaintiff's father, unless the latter was authorized by plaintiff to collect the money or plaintiff received the benefit of it. [3 Randolph, Com. Paper (2 Ed.), sec. 1444.]

Defendant was permitted to introduce in evidence portions of the depositions of D. F. Hunter and plaintiff which were deemed by defendant to contain admissions favorable to his defense. There were two depositions of the plaintiff, one of which was put in evidence by his counsel. A portion of the other was introduced by defendant. Thereupon plaintiff's counsel offered in evidence the remainder of it and the remainder of the deposition of D. F. Hunter. The court excluded what plaintiff's counsel offered, though it was largely explanatory of the parts introduced by defendant and necessary to be read to prevent the latter parts from making a false impression on the jury regarding the testimony of plaintiff and his father. Neither plaintiff nor his father was present at the trial, and if defendant got the benefit of part of the depositions, plaintiff was entitled to the remainder. The ruling excluding the portion offered by plaintiff was erroneous. [State to use v. Rayburn, 31 Mo. App. 385; Edwards v. Crenshaw, 30 Mo. App. 510.]

We have noticed only the incompetent evidence to which objections were interposed. Much that was incompetent went in without objection.

Plaintiff is entitled to the benefit of the evidence going to show he was a bona fide purchaser of the note in suit, for a valuable consideration and before it fell due. If he is found to hold it in that capacity, then he is not affected by equities existing between defendant and his father, nor bound by payments made to his father subsequent to the transfer of the note, unless he authorized his father to receive the payments, or ratified the latter's reception of them after he knew the facts.

The judgment is reversed and the cause remanded. All concur.